UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

HASMIK MARTIROSYAN,

Petitioner,

v.

JAMES JANECKA, *et al.*,

Respondents.

No. 5:26-cv-01868-AYP

**ORDER DENYING PETITIONERS PETITION FOR WRIT OF HABEAS CORPUS *and EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

## I.    INTRODUCTION

Petitioner Hasmik Martisrosyan is an immigration detainee proceeding with a petition for writ of habeas corpus and motion for temporary restraining order ("TRO") filed on April 15, 2026. (Dkt. Nos. 1, 3.) Petitioner is a noncitizen and native of Armenia who has been subject to a final order of removal since 2005. (Dkt. No. 1 at 6.)

Petitioner requests this Court grant Petitioner's *ex parte* application for TRO and to issue a Writ of Habeas Corpus ordering Respondents to release Petitioner, to order the removal of any current or future electronic monitoring device attached to Petitioner's ankle and to enjoin Respondents from (1) transferring Petitioner outside of her current detention center, (2) taking any action regarding the transfer of the Petitioner into custody for the purposes of deportation without

providing 72-hour notice to all undersigned counsel, (3) from removing the Petitioner to any third country pending the resolution of this matter. For the following reasons, the Court **DENIES** the TRO and **DENIES** the Petition for Writ of Habeas Corpus.

## II.    FACTUAL BACKGROUND

Petitioner is a native and citizen of Armenia. (Dkt. No. 1 at 6.) On December 7, 1999, the Petitioner was admitted as a nonimmigrant visitor at the Los Angeles International Airport. *Id*. On June 19, 2000, the Petitioner filed an I-589 Application for Asylum with the former Immigration and Nationality Service. *Id*. The application was subsequently denied. *Id*. On August 15, 2000, a Notice to Appear ("NTA") was issued placing Petitioner into removal proceedings in San Francisco, California. *Id*. She was charged as removable for a visa overstay. *Id*.

On December 17, 2003, the immigration judge denied relief and ordered removal. *Id*. Petitioner appealed to the Board of Immigration Appeals ("BIA") and on March 31, 2005, the appeal was dismissed. *Id*. Petitioner has a judicially final removal order to her home nation. (Dkt. No. 11 at 5.)

Petitioner's removal was not executed but she was required to complete annual routine ICE reporting under an order of supervision. (Dkt. No. 1.) Petitioner complied with those requirements. *Id*.

Petitioner was scheduled to report to ICE in March of 2026 and was not initially detained but provided an ankle monitor. *Id*. Petitioner was again scheduled to report to ICE that same month and was taken into custody despite routinely appearing for the past 21 years. *Id*. Petitioner filed an initial Petition for Habeas Corpus and Temporary Restraining Order ("March TRO") assigned docket number 5:26-cv-01354-FMO-AYP. *Id*. at 7. On March 31, 2026, the Court granted the March TRO, and on April 1, 2026, Enforcement and Removal Operations ("ERO") Los Angeles released the Petitioner on an Order of Supervision ("OSUP")

to comply with a District Court order requiring immediate release. (Dkt. Nos. 1, 11-2.)

The Petitioner was ordered to report to ICE on April 8, 2026. (Dkt. No. 1 at 7.) She appeared but was told to return a week later. (Dkt. No. 1) On April 2, 2026, the Embassy/Consulate of the Republic of Armenia issued a travel document for Petitioner which expires on July 31, 2026. (Dkt. No. 11 at 9.) On April 15, 2026, Petitioner reported to ERO Los Angeles ATD Unit and was taken into custody for removal. *Id.* at 10.

On April 15, 2026, ERO Los Angeles revoked Petitioner's April 1, 2026, OSUP. *Id.* ERO Los Angeles served Petitioner with a Notice of Revocation of Release and conducted an informal interview. *Id.* Petitioner's Notice of Revocation of Release, dated April 1, 2026, indicates that the purpose of revoking her OSUP was because "ICE has obtained a travel document and scheduled [her] removal to take place." (Dkt. No. 11-4.) The Petitioner received an informal interview on April 15, 2026. (Dkt. No. 11-1 at 3.)

In this habeas action, Petitioner argues her detention violates 28 U.S.C. § 2241, the Fifth Amendment right to substantive and procedural due process, and the Administrative Procedures Act ("APA"). Petitioner requests that she be released from detention. (Dkt. No. 1 at 12.)

Respondents argue *Zadvydas v. Davis*, 533 U.S. 678 (2001) does not empower the Court to order the release of a non-citizen who is subject to a final order of removal and is scheduled to be removed to the designated nation in a few days. (Dkt. No. 11 at 5.)

The Government is actively working to secure Petitioner's removal. They have secured travel documents from the Armenian Embassy, secured a flight on May 12, 2026, and therefore Petitioner's detention serves an apparent government purpose. Under these circumstances, the Court finds that Petitioner's detention is authorized by § 1231. Accordingly, the Court orders that the Petition be DENIED.

### III.    PROCEDURAL HISTORY

Petitioner filed a Petition for writ of habeas corpus and TRO on April 15, 2026. (Dkt. Nos. 1, 3.) The Court filed Notice of General Order 26-05 and Briefing Schedule on April 15, 2026. (Dkt No. 7.) Both parties consented to proceeding before a Magistrate Judge. (Dkt. Nos. 5, 7.) On April 20, 2026, the Court ordered Respondents to file a response to the Petitioner's TRO by April 22, 2026, at the same time as their Answer to the Petition was due. (Dkt. No. 9.) The Court also ordered Respondents "not to remove Petitioner from this judicial district pending the resolution of this matter." *Id.*

Respondents submitted their Anwer to the Petition and Opposition to the Ex Parte Request for TRO on April 22, 2026. (Dkt. No. 11.) The Respondents also submitted their Notice of Intended Removal of Petitioner on April 22, 2026. (Dkt. No. 12.) Respondents included a Declaration of Saul Hernandez in their Notice of Intended Removal of Petitioner indicating ERO's plans to effectuate Petitioner's removal to Armenia on April 26, 2026. (Dkt. No. 12-1.)

Petitioner submitted a Reply to Respondents Answer to the Petition and a Reply to Respondents' Opposition to the TRO on April 23, 2026. (Dkt. No. 13.)

Also on April 23, 2026, Respondents filed an *ex parte* application for an order dissolving the "travel restriction" part of the Magistrate Judge's April 20, 2026, Order Requiring Response to Habeas Petition. (Dkt. No. 14.) Petitioner opposed the Respondent's *ex parte* motion. (Dkt. No. 15.)

Due to the time constraints, Respondents filed a Supplement to the *ex parte* motion indicating Petitioner's removal is rescheduled to May 12, 2026, because "the Court has not issued a decision on Respondents' *ex parte* application." (Dkt. No. 16.) The Court denied Respondents *ex parte* application to dissolve the Court's April 20, 2026. (Dkt. No. 17.) The matter is fully briefed.

## IV.   DISCUSSION

Petitioner argues her detention is unlawful under 28 U.S.C. § 2241, the Fifth Amendment's procedural and substantive Due Process clause, and violation of the Administrative Procedures Act. She argues the Court should grant her TRO request. Respondents argue the TRO is unnecessary due to the General Order, Petitioner's detention is authorized because her removal to Armenia pursuant to her final removal order is reasonably foreseeable, and Petitioner cannot delay or block the enforcement of her final order of removal via a habeas petition.

### A. A Temporary Restraining Order is Unnecessary Due to the General Order

This case is governed by Central District of California General Order 26-05, which was adopted in response to the substantial and increasing volume of § 2241 immigration habeas petitions filed in this District and to ensure their uniform, expedited, and orderly resolution on the merits. (*See* Dkt. No. 7.) The General Order establishes an accelerated briefing schedule—requiring a government answer within seven days of service and a prompt reply thereafter—along with procedures for immediate service and prompt adjudication of the petition in its entirety. Pursuant to the General Order, the Court set a briefing schedule for the petition for writ of habeas corpus in this case: Petition was filed on April 15, 2026, Respondents' Answer was due by April 22, 2026, and Petitioner's Reply was due no later than three days after the Answer was served. *Id.*

In light of this governing structure, Petitioner cannot demonstrate the requisite basis for emergency relief under *Winter v. Natural Resources Defense Council*, because the alleged harm is already addressed through the expedited adjudication of the underlying habeas petition. *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) (Petitioner "must establish ... that [s]he is likely to suffer irreparable harm in the absence of preliminary relief"). Thus, the Court concludes that Petitioner is not entitled to *ex parte* relief.

**B. Petitioner's Re-Detention to Effectuate her Removal is Authorized Under 8 U.S.C. § 1231 and *Zadvydas***

After the completion of removal proceedings, the detention, release and removal of an alien who has been ordered removed is governed by 8 U.S.C. § 1231(a). *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (referring to § 1231 as the "post-removal-period detention statute."). Section § 1231(a), governs detention after the entry of a final order of removal. Detention during a 90-day "removal period" after the entry of a final order of removal is mandatory. *See* 8 U.S.C. § 1231(a)(1)-(2). An order of removal becomes final "only upon the earlier of (i) a BIA determination affirming the order or (ii) the expiration of the deadline to seek the BIA's review of the order." *Ocampo v. Holder*, 629 F.3d 923, 926 (9th Cir. 2010) (citing 8 U.S.C. § 1101(a)(47)(B)).

In *Zadvydas*, the Supreme Court held that § 1231 "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Id.* at 689–90. The Court instead interpreted § 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

"[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If released, an alien subject to a final order of removal must comply with certain conditions of release. 8 U.S.C. § 1231(a)(3), (6). The Government may revoke that grant of release. "The revocation of release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke an alien's release

for purposes of removal." *Van Minh v. Dep't of Homeland Sec.*, No. 5:25-CV-02245-HDV-JDE, 2025 WL 2624361, at *2 (C.D. Cal. Sept. 10, 2025). An alien's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the alien must be provided notice of the reasons for revocation of her release, and a prompt informal interview to afford the alien an opportunity to respond. 8 C.F.R. § 241.13(i)(3).

The Court finds that Petitioner's detention is authorized by § 1231(a)(6) because her removal is "reasonably foreseeable." It is undisputed by the parties that Petitioner has a final order of removal. (Dkt. No. 1 at 6; Dkt. No. 11 at 8.) Petitioner's order of removal is administratively final; thus, her detention is governed by § 1231(a). Petitioner has not been detained beyond the presumptively reasonable period of detention of six months.

Further, a noncitizen's detention is authorized if the Respondents are attempting to bring about the alien's removal from the United States. Respondents have taken steps to effectuate Petitioner's deportation. On April 2, 2026, the Respondents secured travel documents from the Embassy/Consulate of the Republic of Armenia for Petitioner. (Dkt. No. 11-3.) Upon revocation of OSUP, Petitioner was served with a Notice of Revocation of Release and provided an informal interview. *Id*. The Notice of Revocation of Removal stated that "ICE has obtained a travel document and scheduled your removal to take place no later than 7/31/2026." (Dkt. No. 11-4.)

In conjunction with the secured travel documents, Respondents included a Declaration of Saul Hernandez in their Notice of Intended Removal of Petitioner indicating ERO's plans to effectuate Petitioner's removal to Armenia on April 26, 2026. (Dkt. No. 12-1.) Respondents rescheduled Petitioners removal to May 12, 2026, to comply with a court order not to remove Petitioner from this jurisdiction. (Dkt. No. 16.) The Respondents have adequately shown that the purpose of

Petitioner's re-detention is to effectuate her removal. And in this case, it appears that there is a significant likelihood of removal in the reasonably foreseeable future.

Petitioner's ongoing detention advances § 1231's basic purpose because there is reason to think that the Government can, and will, remove her to Armenia in the next two weeks. Accordingly, the Court concludes that Petitioner's continued detention is lawful.

### C. Petitioners Remaining Claims

Because the Court concludes that Petitioner's detention is authorized under statutory grounds, it declines to address her alternative arguments.

### V.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered DENYING the Petition; (2) Dismissing the TRO as Moot; (3) the Respondents shall file a status report no later than May 22, 2026, confirming that Petitioner has been removed to Armenia.

IT IS SO ORDERED.

Dated: April 29, 2026

_____

HONORABLE ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE